IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEROY R. WHITTENBERGER,

                Plaintiff,

  v.

DANIEL WINKLESKI, ROSLYN HUNEKE, TAMMY      OPINION and ORDER
STURMNESS, HOLLY GUNDERSON, DANIEL
LAVOIE, BARRY DAUGHTRY, MELISSA                   23-cv-38-jdp
MCFARLANE, NURSE KOREEN FRISK, LISA
PAYNE, W. BROWN, BRAD HOMPE, EMILY
DAVIDSON, and HOLLY GUNDERSON,

                Defendants.

---

Pro se plaintiff Leroy R. Whittenberger alleges that defendants provided inadequate medical care for his fractured knee. Because Whittenberger proceeds in forma pauperis, I must screen the complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Whittenberger's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the complaint for failure to state a claim upon which relief may be granted. But I will allow Whittenberger to file an amended complaint to fix the problems with his Eighth Amendment claim for inadequate medical care.

ALLEGATIONS OF FACT

Whittenberger arrived at New Lisbon Correctional Institution in December 2020. Nondefendant Burkhalter, a nurse, examined Whittenberger for knee pain and told him that

he needed an X-ray. Whittenberger declined Burkhalter's offers of crutches and a low bunk because his housing assignment and shoulder problems made those accommodations impractical. Burkhalter asked defendant Dr. Lavoie to consider an X-ray and physical therapy. Whittenberger's progress notes stated that he reported the highest level of pain. Dr. Lavoie responded that Whittenberger should follow up with the health services unit (HSU) in a month if the problem persisted, and denied an X-ray and physical therapy.

Whittenberger complained that he could not climb into the top bunk. Defendant McFarlane, a nurse, responded that medical staff could assess him for a low bunk and that a copay would apply. Whittenberger complained that he had already paid the copay.

Approximately two weeks after Burkhalter first examined him, Whittenberger complained about severe pain and asked to see a provider. A day later, defendant Frisk, a nurse, advised Whittenberger to continue his case plan, which included rest, ice, elevation, and over-the-counter medications and denied a visit with a provider. After another two weeks, Whittenberger complained that he was still having problems and needed to see a provider. The following day, nondefendant Werner, a nurse, told Whittenberger that he should have received an X-ray and low bunk immediately. Whittenberger continued to report high pain. Werner asked Dr. Lavoie to prescribe an X-ray and physical therapy. Dr. Lavoie prescribed physical therapy but not an X-ray.

Over the next two weeks, Whittenberger complained twice about his knee. A week later, defendant Payne, a nurse, saw Whittenberger and referred him to a provider. Nearly six weeks later, defendant Dr. Daughtry saw Whittenberger and ordered an X-ray. The X-ray showed a fracture of the tibial plateau. Dr. Daughtry ordered an MRI and referred Whittenberger to an orthopedic surgeon.

Six months went by without Whittenberger receiving an MRI. During this period, McFarlane and Frisk told him that it had been ordered. Dr. Daughtry told Whittenberger that the MRI had not been scheduled and noted that Whittenberger's knee had not improved and that he was in severe pain. Nondefendant Muller, the institution complaint examiner, improperly rejected his grievance for not showing a single significant date of incident.

Later that month, Whittenberger received an MRI. Approximately ten days later, Whittenberger complained to defendant Sturmness, the HSU manager, that he was in severe pain. The day after, McFarlane responded that a splint was issued and that Whittenberger was scheduled to see an orthopedist. Two weeks later, nondefendant Dr. Nelson, an orthopedic surgeon, evaluated Whittenberger. Dr. Nelson said that Whittenberger could live with the pain or have surgery and opted to order a cortisone injection.

About two weeks after that, Sturmness mistakenly told Whittenberger that an MRI was ordered in February 2022, because the MRI had been scheduled for November 2021.

A week later, Whittenberger asked about the status of the cortisone injection. The following day, McFarlane responded that it had been ordered. Whittenberger received the cortisone injection four months later.

Three days later, Whittenberger asked to see an orthopedist due to severe knee pain. The next day, Sturmness told him that he was on a waiting list to see nondefendant Dr. O'Brien. Shortly over two months later, Whittenberger followed up on his request to see an orthopedist. The following day, McFarlane responded that he was scheduled for December 2022.

On December 2, 2022, Whittenberger told HSU that the cortisone shot did not work and that he wanted surgery. Four days later, defendant Payne, a nurse, told him that he was

3

scheduled to see Dr. O'Brien that month. At the end of the month, Whittenberger asked about the status of his appointment. Frisk responded that he was on the list. As of January 5, 2023, Whittenberger had not received an appointment with Dr. O'Brien.

Whittenberger alleges that he filed two grievances that were improperly denied on the merits because medical staff consciously disregarded his medical needs. Whittenberger adds that the second grievance was improperly rejected because defendant Davidson, the corrections complaint examiner, contacted the reviewing authority, defendant Gunderson, when denying the grievance even though Gunderson was a regional nursing coordinator.

ANALYSIS

Whittenberger alleges claims under the Eighth Amendment, Fourteenth Amendment, Americans with Disabilities Act (ADA), Rehabilitation Act, and Civil Rights of Institutionalized Persons Act, along with negligence and medical malpractice claims under Wisconsin law.

**A. Eighth Amendment**

Whittenberger bases his Eighth Amendment claim on allegations of inadequate medical care and unconstitutional conditions of confinement. But Whittenberger fails to describe any conditions of his confinement apart from the alleged inadequate medical care. So I will consider only the claim that defendants provided inadequate medical care. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment for inadequate medical care, Whittenberger must allege that he

4

had an objectively serious medical condition and that defendants consciously disregarded that condition. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Id.* Whittenberger has pleaded a serious medical need because he alleges that he had a tibial plateau fracture that caused him serious pain.

To state a claim, Whittenberger must also allege that defendants "actually knew of, but disregarded, a substantial risk to the [his] health." *Id.* Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Medical personnel may provide inadequate medical care by choosing "easier and less efficacious treatment" that they know is ineffective. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *see also Pyles*, 771 F.3d at 409 ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was blatantly inappropriate."). A significant delay in effective medical treatment also may support a claim of inadequate medical care, especially where the result is prolonged and unnecessary pain. *Berry*, 604 F.3d at 441.

Whittenberger bases his claim for inadequate medical care against Dr. Lavoie on his failure to diagnose the tibial fracture and order an X-ray or MRI. "But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and does not amount to conscious disregard of medical needs. *See Estelle*, 429 U.S. at 107. Whittenberger acknowledges that, although Dr. Lavoie

failed to order an X-ray or prescribe physical therapy initially, he was on a case plan of rest, ice, elevation, and over-the-counter medications. And Dr. Lavoie later ordered physical therapy. Although Whittenberger's allegations suggest that Dr. Lavoie knew about his serious pain, he was receiving over-the-counter pain medication and he does not allege that he specifically complained about pain or asked for stronger medication. Nor does Whittenberger allege any other facts suggesting that he sought treatment from Dr. Lavoie for his pain. Whittenberger's allegations against Dr. Lavoie focus on his efforts to obtain diagnostic testing. There was a delay in ordering physical therapy, but Whittenberger's allegations do not suggest that this delay unnecessarily prolonged his pain. Indeed, Whittenberger alleges that Dr. Lavoie disregarded his medical needs by prescribing physical therapy because it would have required him to put pressure on a fractured knee. At most, this theory suggests medical malpractice, not conscious disregard of medical needs. *See id.* And the mere fact that other providers ordered an X-ray and MRI for Whittenberger does not, without more, suggest that Dr. Lavoie's failure to do this violated the Eighth Amendment. *See Pyles*, 771 F.3d at 409. Whittenberger has not provided any other allegations suggesting that Dr. Lavoie knew that Whittenberger's case plan would be less efficacious than these tests but stayed with this course of treatment because it was easier. I will not allow Whittenberger to proceed against Dr. Lavoie on his claim for inadequate medical care.

According to Whittenberger, Dr. Daughtry: (1) ordered Whittenberger an X-ray six weeks after Payne referred Whittenberger to him; (2) ordered Whittenberger an MRI and referred him to an orthopedic surgeon; and (3) told Whittenberger that the MRI had not been ordered and noted that Whittenberger was in severe pain and that his knee had not improved. Dr. Daughtry's ordering of diagnostic testing does not suggest that he consciously disregarded

6

Whittenberger's medical needs. There were delays in Whittenberger's receipt of these services, but Whittenberger does not allege that Dr. Daughtry caused these delays or ignored them, and his allegations do not suggest this. I will not allow Whittenberger to proceed against Dr. Daughtry on his claim for inadequate medical care.

Whittenberger alleges that McFarlane: (1) said that Whittenberger would have to pay a copay that he already paid to see medical staff; (2) told Whittenberger that an MRI had been ordered; (3) told Whittenberger that a splint had been issued and that he was scheduled to see an orthopedist a day after Whittenberger complained to Sturmness about severe pain; (4) told Whittenberger that the cortisone injection that Dr. Nelson ordered had not been ordered; and (5) told Whittenberger that he had an appointment with an orthopedist in December 2022 a day after Whittenberger complained about a two-month delay in receiving this appointment.

These allegations do not support a claim for inadequate medical care against McFarlane. "[T]he imposition of a modest fee for medical services, standing alone, does not violate the Constitution." *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012). Whittenberger's allegations do not suggest that McFarlane's assessment of a copay that he already paid stopped him from receiving medical care, *cf. id.*, or that McFarlane intentionally assessed the fee twice, *cf. McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence, does not violate the Constitution."). Whittenberger's other allegations indicate that McFarlane was promptly responding to his medical inquiries. Whittenberger complained about delays in seeing an orthopedist and a cortisone injection, but Whittenberger does not allege that McFarlane caused these delays or ignored them, and his allegations do not suggest this. Whittenberger has provided no allegations suggesting that McFarlane ignored his complaints

7

or refused to provide necessary treatment that she was authorized to provide. I will not allow Whittenberger to proceed against McFarlane on his claim for inadequate medical care.

Whittenberger alleges that Frisk, a nurse, prescribed his case plan and denied a provider visit after he complained about severe knee pain and asked to see a provider. But it is clear from Whittenberger's allegations that his provider prescribed the case plan (which included pain medication), and Frisk could defer to the provider's medical judgment. *See* Dkt. 1 at 3; Dkt. 1-1 at 12–13; *see also Pulera v. Sarzant*, 966 F.3d 540, 553 (7th Cir. 2020). Apart from that, Whittenberger alleges that Frisk: (1) told him that an MRI had been ordered; and (2) told him that he had yet to receive an appointment with an orthopedist regarding his request for surgery. But Whittenberger does not allege that Frisk caused these delays or knowingly failed to expedite these services despite the ability to do this, and Whittenberger's allegations do not support this inference. I will not allow Whittenberger to proceed against Frisk on his claim for inadequate medical care.

Whittenberger alleges that Payne referred him to a provider. Whittenberger adds that Payne told him that he was scheduled to see Dr. O'Brien four days after Whittenberger complained to HSU that he wanted surgery because the cortisone injection was ineffective. Because these allegations fail to suggest that Payne consciously disregarded Whittenberger's medical needs, I will not allow Whittenberger to proceed against Payne on his claim for inadequate medical care.

Whittenberger alleges that, a day after he complained about severe pain to Sturmness, McFarlane responded that a splint was issued and that Whittenberger was scheduled to see an orthopedist. Dr. Nelson, according to Whittenberger, saw him two weeks later. Whittenberger also alleges that, three days after he asked to see an orthopedist due to severe knee pain,

Sturmness told him that he was on a waiting list to see Dr. O'Brien. These allegations indicate that Sturmness promptly responded to Whittenberger's complaints, not that she ignored them. Although there was a considerable delay in seeing Dr. O'Brien, the mere allegation that Sturmness told Whittenberger that he was on the waiting list to see him does not, without more, suggest that she caused this delay or ignored it despite the ability to expedite this appointment. Whittenberger adds that Sturmness mistakenly told him that an MRI was ordered in February 2022 because it had been scheduled for November 2021, but simple mistakes do not violate the Eighth Amendment. *See, e.g.*, *McGowan*, 612 F.3d at 640. I will not allow Whittenberger to proceed against Sturmness on his claim for inadequate medical care.

Whittenberger alleges that he filed two grievances that were improperly denied on the merits because medical staff clearly consciously disregarded his medical needs. But, as discussed above, Whittenberger's allegations do not suggest that medical staff did this. In any case, the non-medical staff reviewing Whittenberger's grievances would be "entitled to defer to the professional judgment of the facility's medical officials on questions of [his] medical care." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). Whittenberger's allegations do not suggest that any non-medical grievance examiner or prison administrator willfully "ignored or mishandled" his grievances, *see Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019), or completely "turned a blind eye to a medical treatment failure," *see Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 767 (7th Cir. 2021). This allegation does not support an Eighth Amendment violation.

Whittenberger adds that one of his grievances was improperly rejected because Davidson, the corrections complaint examiner, contacted the reviewing authority, Gunderson, when denying the grievance even though Gunderson was a regional nursing coordinator. This

9

allegation reflects a mistaken belief that Gunderson acted as the institution complaint examiner and was the first official to review this grievance. Because Gunderson was the reviewing authority, she would have reviewed the institution complaint examiner's decision. *See* Wis. Admin. Code § DOC § 310.10(10). Whittenberger's allegations do not suggest that it is inherently biased or improper for a medical official to review a decision on a medical grievance. I will not allow Whittenberger to proceed on his inadequate medical care claim against Gunderson, Davidson, or any other grievance examiner or prison administrator based on these allegations.

Whittenberger adds that nondefendant Muller, the institution complaint examiner, improperly rejected his grievance for not showing a single significant date of incident. Because Whittenberger failed to name Muller as a defendant in the complaint's caption, I will not allow Whittenberger to proceed on his inadequate medical care against Muller. *See Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005).

**B. Fourteenth Amendment**

Whittenberger alleges a Fourteenth Amendment claim, but it is unclear on what theory he bases it. Because Whittenberger is a convicted prisoner, the Eighth Amendment, applies to his inadequate medical care claim. *See Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). If Whittenberger bases his Fourteenth Amendment claim based on the alleged deficiencies in his prison's grievance process, "the failure to follow a state's inmate grievance procedures is not a federal due-process violation." *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Whittenberger's allegations do not support any other theory of Fourteenth Amendment liability. I will not allow Whittenberger to proceed on his Fourteenth Amendment claim.

### C. ADA and Rehabilitation Act

I will not allow Whittenberger to proceed on his ADA and Rehabilitation Act claims for damages against defendants personally because these statutes do not authorize this relief. *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015); *Glick v. Walker*, 272 F. App'x 514, 520 (7th Cir. 2008). In any case, because these are anti-discrimination statutes, prison officials usually do not violate them "when failing to attend to the medical needs of disabled prisoners." *See Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001) (alteration adopted); *Wilson v. Murphy*, No. 14-cv-222-bbc, 2016 WL 1248993, at *6 (W.D. Wis. Mar. 29, 2016). Whittenberger's allegations do not suggest that he was "discriminated against because he was disabled," *see Resel*, 26 F. App'x at 577, such as by being "deprived of access to medical services that were available to other inmates," *Corbin v. Indiana*, No. 3:16CV602-PPS/MGG, 2018 WL 1920711, at *3 (N.D. Ind. Apr. 23, 2018). I will not allow Whittenberger to proceed under his ADA and Rehabilitation Act claims.

### D. Civil Rights of Institutionalized Persons Act

I will not allow Whittenberger to proceed on this claim because this statute does "not provide for a private cause of action." *Pleasant-Bey v. Shelby Cty.*, No. 18-6063, 2019 WL 11769343, at *2 (6th Cir. Nov. 7, 2019); *accord Callahan v. Sw. Med. Ctr. of Lawton*, 178 F. App'x 837, 840 (10th Cir. 2006); *Graham v. Thompson*, No. 88 C 3323, 1988 WL 64267, at *1 (N.D. Ill. June 10, 1988).

### E. Wisconsin-law claims

When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (courts usually decline to

exercise supplemental jurisdiction over "pendent state-law claims" if "all federal claims are dismissed before trial"). Because I have dismissed all the federal claims, I'll dismiss Whittenberger's medical malpractice and negligence claims without evaluating whether they might state a claim. Without a basis for jurisdiction in federal court, the malpractice and negligence claims belong in state court.

Whittenberger also fails to establish that this court could exercise federal diversity jurisdiction over these claims because he does not allege that he and defendants are citizens of different states and nothing in the complaint suggests that they are.

CONCLUSION

Whittenberger fails to state a claim under the Fourteenth Amendment, ADA, Rehabilitation Act, and Civil Rights of Institutionalized Persons Act. Because I see no plausible amendment that would cure the deficiency, I will not allow him to attempt to replead these claims in his amended complaint.

But I will allow Whittenberger to file an amended complaint in which he attempts to fix the problems with his Eighth Amendment claim for inadequate medical care. Whittenberger properly alleges that he had a serious medical need—his fractured knee—that may have gone without proper care for an unreasonably long time. But Whittenberger fails to allege that any of the defendants were personally responsible for the delay, and personal responsibility is critical to claim under the Eighth Amendment.

Whittenberger may also include his medical malpractice and negligence claims in his amended complaint. If he states a federal claim under the Eighth Amendment, I will exercise

supplemental jurisdiction over these state-law claims and I will screen them on the merits, just as I have screened the federal claims.

In drafting his amended complaint, Whittenberger should remember to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, the alleged inadequate medical care. Whittenberger must take care to allege what each defendant did, or failed to do, that violated his right to adequate medical care.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims wishes to assert.

ORDER

IT IS ORDERED that:

1. Plaintiff Leroy R. Whittenberger's complaint, Dkt. 1, is DISMISSED for failure to state a claim upon which relief may be granted. Plaintiff's claims under the Fourteenth Amendment, ADA, Rehabilitation Act, and Civil Rights of Institutionalized Persons Act are DISMISSED without leave to amend, and his claim for inadequate medical care under the Eighth Amendment is DISMISSED with leave to amend.

2. Plaintiff may have until May 22, 2023, to submit an amended complaint that fixes the problems with his Eighth Amendment inadequate medical care claim.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages. The amended complaint's text must be large enough and have enough spacing between lines and in the margins for the court to read it easily.

4. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

5. If plaintiff fails to comply with this order, I may dismiss this case.

6. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

7. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court are unable to locate him, this case may be dismissed for failure to prosecute.

8. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

9. The clerk of court is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered April 21, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge